Our next case for argument is 23-1659 Falzon v. HHS. Mr. Rogers, please proceed. Thank you, Your Honor. Your Honor, my name is Greg Rogers. May it please the Court, I'm here on behalf of the appellate, Ms. Adrienne Falzon. And she is the legal representative of Paul Giaccio as for his estate. The central issue in this case, Your Honors, is whether or not the Court might apply equitable tolling of the petition that was filed by the petitioner on March the 18th of 2021 in a vaccine case. Particularly, Your Honor, we are looking at the extraordinary circumstances that were caused by the COVID-19 pandemic during that period of time. Counsel, so let's just focus for a sec. The petition is 119 days late, is that correct? Yes, Your Honor. Okay, and so you created a chart and that chart sort of detailed what reasons existed for various time periods for the delay. Yes, Your Honor. Is that fair? Yes, Your Honor. Okay, and the board said, look, we're not going to decide whether, you know, the attorney's COVID or the attorney's father's illness and subsequent death satisfy it. I think they do. But the board didn't apply on that because they said, regardless. Yes, Your Honor. You don't meet 119 days. So I felt like it's a lot like when my kid misses curfew at night, right? And then they try to give me the excuse about how it took it 15 minutes to get the Uber. That doesn't explain why you're an hour late. Yes, Your Honor. So how do you explain why you're 119 days late? Yes, Your Honor, on the subject of the second problem of the test, which is actually the extraordinary circumstances, we do believe that there were a few days that were missed by the Court of Federal Claims. The one in particular, Your Honor, was on November the 14th. We're a small office. We have five office members and three attorneys. We had a paralegal in our office that unwittingly came to the office with COVID. She'd been told that she didn't have COVID. Turns out she did have COVID, and she basically exposed our entire office on November the 14th of 2020 to the COVID virus. As a result of that, we shut down our complete operation for 10 days up until Thanksgiving just simply to make sure that all of our employees are older, and we wanted to make sure that we weren't spreading the virus around the office. But you could have engaged another lawyer. Yes, Your Honor, that's a good point, and we didn't do that. We really thought that, to be honest with you, that we were going to be able to get the petition filed under the circumstances, but we didn't. We think that those 10 days also would constitute extraordinary circumstances, which added to the 113 that was found. I mean, I'm not going to second-guess the trial court on that. I mean, among other things, I mean, lots of people have risk of exposure. If you weren't actually sick, you went home and you worked from home. Like, I don't – I mean, what you're asking for would be such a sweeping ruling, and so many circuit courts have already looked at this issue of what do we do when people miss deadlines because of COVID-related quarantine. Not COVID, illness. I think actual illness of the person involved who needs to do the filing is one thing, but it's another thing to say, okay, well, we all quarantined because somebody else was ill. Because, you know, I don't know about you, but while I was quarantined, I was still working from home. Yes, Your Honor. Unfortunately, at that time, we were not as well-equipped to work remotely as we are now. The world has changed considerably in the last four years in terms of our ability to do that, and we were adapting, in the process of adapting, to working remotely at that time. The paralegal that got sick was the only paralegal in our office that had any experience at all dealing with the vaccine court. We have other practice areas that our people are involved in. In terms of the diligence, the court also – we appreciate the court actually addressing the second prong of the test. The court didn't have to do that because the court found that we didn't meet the first prong of the test, which was diligence. But the area of time that the court focused in on was really from October the 4th through November the 1st, during that period of time when I returned from my father's funeral. And the court mentioned that we were working during that time because we had social security disability hearings that we were doing in that period of time. In other words, other places were given higher priority. They were in that moment, Your Honor. Yes, sir, they were. And they were because so many of those hearings had been reset from the previous two months that I had been out of the office in August and September with my father's illness. But having said that, we were working on the case. We had an expert that we were working with, Dr. Stern. We were trying to find some support and a causation from a medical expert. Dr. Stern was an expert in sepsis. That is, in fact, what Mr. Giaccio died from was sepsis. And we were pressing her to get a letter to file the case in early November, and then the circumstances of early November took place that were unforeseen, and that's what caused the problem, Your Honor. We're not sitting here in judgment of the decisions you made in difficult circumstances, but have to decide whether the claims court has substantial evidence to determine that there were extraordinary circumstances. Yes, Your Honor. So we're reviewing them in a deferential manner. Sure, I understand. The courts have determined that this issue of equitable tolling is something that is to be applied sparingly, certainly, and we recognize that. It's also determined that it is to be applied on a case-by-case basis. And so even though it's a question of law, there still is some level of factual analysis that has to be determined on a case-by-case basis to make that decision. We respect the Federal Court of Claims, their opinion on the decision. We feel like their analysis was fair, but it was an error simply because there were circumstances that were going on on the issue of diligence during that period of October to November where we were trying to get the expert report that we felt like needed to be in place to file the claim. Certainly, the respondent has taken the position that an expert report was not required, but in good conscience we didn't feel like we should file a petition without any plausible theory under the Althea standard. Well, in the end, did you file it with the expert report? No, Your Honor, we didn't, and so reluctantly. But so with regards to diligence, the court has determined that reasonable diligence is required, not maximum feasible diligence. And we respectfully contend that we were being reasonably diligent during that period of time. Had we known what was coming in November with my illness in the first part of November and then the COVID illness of our paralegal on November the 14th, we would have filed the petition during the October period. But unfortunately, intervening circumstances took place that we simply had no way of predicting that was going to take place. And then finally, with regards to the 113 days in judgment, you accurately indicated that Judge Rommel found that there was 113 days of extraordinary circumstances. We believe that the period of time both in the illness of my paralegal on November the 14th through Thanksgiving would have been an additional 10 days. That would have made the petition timely. We also asked for consideration of the fact that Georgia was in a state of emergency shutdown from March the 14th, Your Honor, through essentially July the 12th of 2020. So that's not an argument you made below there, is it? That's correct, Your Honor. That is an incantation that we made just from the period of the COVID. I think, quite honestly, Your Honor, the problem with my paralegal getting COVID was a bigger issue. That sent our office into a complete tailspin, and not just because we had to quarantine, but also because just about all of our staff are elderly and we wanted to make sure that everybody was safe. Surely, I now wonder if that was the appropriate decision, but it felt like the right decision at the time. Sometimes when people miss deadlines, clients file malpractice claims. Did that happen here? It was not, although when this happened, Judge, we alerted the petitioner to the situation. We advised them to get independent counsel. We spoke with the Georgia Bar Association on how to handle that appropriately. Certainly, it's the first time in my career I've ever been in this situation. We sent her a letter advising her that she could get legal representation and pursue that. The petitioner decided, she asked if there was any possible remedy. I said, well, the one possibility is that we file it late and petition the court for an equitable tolling of the statute of limitations, and that's what she opted to do. So here we are. I mean, in order to prevail on malpractice, they'd have to almost prove that forecausation, that forewarning was extended on in order to prevail. I mean, what's the deal with the left arm, right arm thing? I'm just going to jump to the merits of something for a second. I mean, blood work was one arm. The flu shot was the other arm. Notably, it's a big deal, and that was probably, in all honesty, Your Honor, why I was so intent on trying to get an expert report before we... Because it was going to be a hard case to prove on the merits. This case arose from the petitioner had a family friend that was a world-renowned expert on sepsis, and that expert had privately told the petitioner and the family that they felt like there could be some connection between the vaccine and the very rare condition, the bacterial infection that he got in the right arm. So as the case materialized, we were not confident because the expert was not able to really produce a lot of evidence to support that. She still nonetheless felt like there could be an aggravation of the bacterial infection in the right arm because of the flu shot that was given a couple of days prior to his death. But having said that, we recognized that that was a stretch, and we really wanted to be on solid footing before we filed the petition, and that's why we were working so hard to get the expert report. All right. Should we hear from opposing counsel? Yes, Your Honor. I'll wait the rest of my time for a moment. Thank you. Good morning, Your Honors. May it please the Court. As Judge Romeau noted in her opinion, this case involves sad circumstances with which we can all sympathize. The loss of a child or a parent is understandably difficult, and the pandemic presented undeniable challenges for all of us. However, it's the commonality of these experiences that make them unextraordinary for purposes of equitable tolling. The Supreme Court has made clear that equitable tolling should be applied sparingly. The commonality of these experiences make them – because everybody has somebody that dies, you think that can't amount to extraordinary circumstances that justifies equitable tolling? If you have a close family member that died, you think because everybody has people that die, it's not an extraordinary circumstance that warrants tolling? I think it can. I don't think it necessarily does in every case. And as Mr. Rogers acknowledged, this is an issue that needs to be determined on a case-by-case basis. However, that will then have a bearing on what other people think. Well, then you need to think, because you didn't start this with a case-by-case basis. You started by saying these are all common circumstances, and that's why they can't be extraordinary. You made a blanket statement of objective scope that would cover all circumstances like this. I believe that the circumstances that are presented by this case, that many, many people did have issues during the pandemic in terms of being able to do their jobs. If the court were to find that that was sufficient by itself to justify equitable tolling, it could open the floodgates to any number of potentially time-barred claims that people would then be able to claim equitable tolling justifies being able to file the claim late. So I think that's where, in this case, you have to look at the specific facts. And I think the problem that both the Special Master and Judge Rumel had is that Mr. Rogers didn't establish with specificity how those circumstances stood in the way of him timely filing the claim. As you indicated, if he himself were not able to file the claim in a timely fashion due to his own illness or due to issues that were going on in his office, he could have enlisted another attorney to take the case for him. And that would have, I think, indicated the kind of diligence that the standard for equitable tolling anticipates, is that lawyers have a duty to be diligent in the way that they're handling their claim. As Judge Rumel noted, when faced with the choice between filing a timely petition without an unnecessary expert report or filing an untimely petition accompanied by an unnecessary expert report, a diligent pursuit to preserve petitioner's rights required counsel to choose the former. And so that was, you know, I appreciate that Mr. Rogers wanted to find an expert that would be able to support his case. We certainly see numerous cases filed in our program that don't have an expert report accompanying the petition. That's later, you know, petitioners later supplement the record with expert reports. Or if they aren't, the cases get dismissed. But then you weren't, but at least you've preserved the timely filing of the petition. And that was, I think, the choice that was incumbent upon Mr. Rogers in this case was to file the petition before the statute ran. And then, you know, he could continue to try to pursue this expert report. You know, as you noted, Judge Moore, he actually ended up filing the petition untimely without an expert report. So, you know, I think that kind of proves the point that the expert report wasn't necessary in the first instance. You know, we think that Judge Rommel in particular did a thorough analysis of the facts and applying them to the legal standard that's applicable to equitable tolling. We would encourage the court to adopt her reasoning. We think it's sound. We think it's thorough on both the diligence prong and on the extraordinary circumstances prong. Did Judge Rommel find that the 66 days attributed to the father's illness and death and funeral were not an extraordinary circumstance? I don't believe that either the special magistrate or Judge Rommel actually reached that issue. Because I think they both determined that even if they were to generously interpret the equitable tolling standard for extraordinary circumstances, to include the father's illness and counsel's illness, that that still wouldn't amount to a sufficient number of days to make the petition timely. So I think they left open the possibility that those issues could justify equitable tolling, that they could constitute extraordinary circumstances for purposes of equitable tolling. But I don't believe either the special magistrate or Judge Rommel actually made that finding. Are there cases on that point? Are there cases on the point about when an attorney gets ill, whether that can or cannot qualify as satisfying extraordinary circumstances? I'm not aware of any cases. I know there aren't in the context of the Vaccine Act. I have not done an exhaustive search for cases on that issue outside of the circuit or outside of our program. I know that in KG, which is an opinion of this court, the court noted that the mental incapacity of the petitioner, in that case herself, could constitute an extraordinary circumstance for purposes of equitable tolling. But as Judge Rommel noted, that is distinguishable from this case in which we're looking at counsel's incapacity. And it's not so much the counsel's mental incapacity, it's just his incapacity due to his illness or these other cases that he was working on, his father's illness and things of that nature. So I think that is an issue that has not been addressed by this court. Are we reviewing Judge Rommel's decision or the special magistrate's? So actually, that's an interesting question. I believe that the standard of review here is probably de novo because we are not contesting the facts below, so there wasn't really fact-finding that was required by the special magistrate or Judge Rommel. They were accepting, we accepted the facts the petitioner was alleging as true, and so the court voted as well. The case law does suggest that the determination of whether equitable tolling applies when the facts are undisputed is a question of law that the court would review de novo. And in your view on the 113 days then, I just want to make sure I got this right, you think the special magistrate and Judge Rommel just assumed without making a finding that there were up to 113 days of extraordinary circumstances? That is my reading of both of those. And that's what you would have us do? I think that it's unnecessary. I think as the special magistrate and Judge Rommel concluded, it's unnecessary to make a finding on that issue because even if you were to determine that counsel's illness and the illness and death of his father constituted extraordinary circumstances, it still would not render the petition timely filed. Unless we think we've filed another six-plus days in the record, right? You could. I mean, certainly that would be within the court's authority to do that, I think, under de novo review. But I think that you would then be having to make fact finding that, you know, that's not really the role of this court to do in the first instance. I think if the court thinks that there's still an issue that needs to be determined on whether additional days could be considered extraordinary circumstances, for instance, the state of emergency in Georgia that Petitioner just raised on in this appeal, I think, again, there would need to be some showing that the state of emergency and the shutdown during that period of time, which at this point is outside of the requested tolling period that Petitioner has argued for, how that extraordinary circumstance would then have prevented a timely filing and also that there would need to be some showing of counsel's diligence during those periods to show that despite the shutdown, he was still trying to advance the claim. Thank you. Mr. Rogers, you have some rebuttal time? Thank you, Your Honor. Just briefly. May it please the Court. Just a couple of points, Your Honor. Number one, we agree that the standard here is de novo, and certainly we believe that the Court has an opportunity to review Judge Romero's findings in its entirety. We recognize that this Court typically is not in the business of looking at factual issues. We feel that the equitable tolling statute or equitable tolling issue, however, is one which is unusual in that it does require a certain level of consideration of the facts under de novo. The other thing I wanted to mention, Your Honor, was in 2020, the COVID vaccine or the COVID-conditioned virus looked a whole lot different in 2020 than it does now. And at that time, we felt like we had to lock down our office because of the exposure that we had from one of our paralegals. With regards to referring it out to another attorney, Judge Lowery, the vaccine bar is quite small. It's so much different, particularly in rural Georgia, where we don't have a lot of other vaccine attorneys in the state of Georgia, much less certainly my area. So perhaps I should have done that. But to be perfectly honest with you, I wouldn't have really known who to call, so to speak. I appreciate the Court considering all of these arguments. We realize the gravity of the situation here. I also want to say one thing in closing on behalf of Ms. Falzon. I operated as her attorney. I was her agent. I take full responsibility for all the issues that bring us here today. And I appreciate you letting me have this opportunity. Thank you. Thank you both counsel. This case is taken under submission. Thank you.